LAND, J.
Plaintiffs sued for the use and benefit of their minor son, John F. Sasser, to recover damages for personal injuries sustained by the latter on March 20, 1908, while in the service of the defendant company.
Briefly stated, the alleged cause of action is as follows:
John F. Sasser, a youth 19 years old, was employed by the defendant as a switchman on its logging railroad, consisting of main and spur tracks constructed through the pine woods. On March 20, 1908, the said Sasser, while engaged in coupling a steam loader and a skeleton log car, fell or was thrown beneath one of the wheels of the loader, and his left leg was so badly crushed that amputation became necessary.
The main ground of alleged negligence against the company was the operation of a defective spur track, full of depressions or sags, and it is alleged that, while the said Sasser was engaged in coupling the car and the loader, one of the wheels of the latter ran into a deep depression, thereby causing a sudden and violent side movement of the reaches and drawhead of the car, by which the said Sasser was overturned and his limb crushed beneath the opposite wheel of the loader. It is alleged that the company was further negligent in furnishing an insufficient coupling device, commonly called a “rooster,” which contributed to the accident.
The defense was a general denial, coupled with pleas of contributory negligence and assumption of the risks of the employment in which the servant was engaged.
The case was tried before the court without a jury, and judgment was rendered in favor of the plaintiffs for the sum of $3,500 and costs. Defendant has appealed, and the plaintiffs have joined in the appeal and prayed for an increase of the quantum of damages.
The minority of the son cuts no figure in the case, as he was a man in stature and strength and was experienced in his duties.
The primary alleged cause of the injury was an unusually deep depression or sag at *378 the place of the accident. The existence vel non of this sag is one of the hotly contested issues of fact in this litigation. The evidence on this point may be summarized as follows:
W. J., Sasser, fireman on the steam loader: Track in bad condition; sagged down on one side something like 9 or 10 inches; three ties were broken; track afterwards repaired.
Ernest Hightower, one of the crew: Wheel of loader ran into a hole or sag some 7 or 12 inches deep; saw two ties broken; track was afterwards repaired and new ties substituted; could not pull the loader out of the sag without uncoupling the car.
McDonald, top-loader and foreman: Loader rocked and gave the reaches a side motion. Sasser was struck on the leg and the wheel ran over him; did not notice the sag at the time, but knew there was one there from the swaying of the loader; track was repaired after the accident and new ties put in; the woods foreman had the loader removed from the spur track because, as he said, it was dangerous to load on; general condition of track before the accident was good; there were low places and holes in track caused by wet weather.
Fort, one of the loading crew: Loader ran into a sag about 4 inches deep just as Sasser was making the coupling, and the end of the reach struck Sasser on the leg and knocked him off his balance, and before he recovered the wheel caught him; the track was fairly good, ordinary track; did not notice any broken ties; the rail bent down with loader in the sag; during the trial visited the place of the accident and saw some poles and shimming about 10 feet from the spot where Sasser was injured.
Waldron, engineer of loader: Went to back, and the machine rocked like it would turn over; moved the ear the next morning and saw several low places, some of 14 inches in depth; woods foreman told him to get the car, because three men had been hurt in there, and he was not going to hurt any more, and that the track was dangerous to load on; that the loader rocked all along that spur track. ■
Pugh, engineer: General condition of spur track was bad; some joints down 4, 6, and 10 inches, some more; some of the joints and ties were out of sight in the mud; track was in a dangerous condition; ground very soft; repair gang at work jacking up track with poles and knots.
Sasser, the injured person, did not perceive the sag at the place of the accident; saw sags at other places on the spur track and on the main line; it was a good spur track, but dangerous at the bad places; on the day of the accident the tract; was muddy ; never saw any cross-ties mired down.
Lewis and Byrd testified that Dehaven, the woods foreman, said that he had moved the loader off the spur track because it was dangerous and several men had been hurt in operating the same.
Hopkins, one of the crew of the loader, was on that machine at the time of the accident. He did not notice the rocking of the loader, and did not observe any sag in the track, or broken ties, although he remained near the loader the rest of the day.
In behalf of the defendant, Bush, track foreman, and Dehaven, woods foreman, testified positively to the good condition of the track at the time and place of the accident. Howell, bookkeeper, present at the time of the accident, did not observe any sag in the track, or any rocking of the loader. He was talking to Dehaven at the time. Ed. Nugent, employs, who was near the place of the accident, and went there immediately, did not observe any sag in the track, or broken ties, or broken rail, or that the loader had careened. H. Nugent, employs, who arrived on the scene a little later, testified to the same effect, and that he went there to see what *380 obstruction had thrown the boy. David and Eugene Gunter, citizens, passed the place where the accident occurred the following morning, and looked at the place. They saw no sag, or broken ties, or bent rail, and the track looked good to them. Sullivan was sent on the evening of the accident to move the loader. He did not remember the condition of the track, and looked, but did not see any sag or broken ties. Merritt, the regular woods foreman, who returned to his post three days after the accident, and shortly afterwards inspected the spur track, testified that at the place of the accident the track was in good condition, having been under his orders constructed of all new ties, and was one of the best parts of the spur track; that at that point there was no sag in the track, no broken cross-ties, or bent rail.
It is to be noticed that not a single witness testified to the existence of this sag pri- or to the accident, and the preponderance of the evidence shows that it was not visible to the trained or ordinary observer immediately after • the accident. We are forced to conclude that the judgment below is clearly contrary to the preponderance of the evidence.
It is therefore ordered that the judgment below be reversed, and it is now ordered that plaintiffs’ suit be dismissed, with costs in both courts.